Carpenter, Jr. v. Timothy Douma Carpenter, Jr. v. Timothy Douma Good morning. Good morning. Your Honors, and may it please the Court, my name is Bill Keeler. I'm here on behalf of the Plaintiff Appellant, Ronald Carpenter. Mr. Carpenter has made a substantial showing of violations to his constitutional rights. However, he's run up against the strictures of the Anti-Terrorism and Effective Death Penalty Act and its one-year statute of limitations. As I might add, I have so many others before him. It's a strict statute. Yes, Your Honor. And we're here to ask the Court, in equity, to look at that statute of limitations. More specifically, however, Mr. Carpenter has won the ability to have this Court or the District Court equitably toll that statute of limitations because he has met the reasonable diligence and faced the extraordinary circumstances that are necessary to have that statute tolled. And as a result, we're essentially asking the Court for a new trial through remand to the District Court with direction on how to apply the equities, as well as direction to the District Court regarding the violation of his constitutional rights. Now, of course, with something like equitable tolling, this Court, at least, has, as the State points out, applied an abuse of discretion standard because it's one of those things where you really have to look and decide, you know, how diligent do you think the person was? What were the problems that led to the failure to meet the limitations period? And when Congress establishes a strict limitations period like that, they, on the whole and by and large, mean for it to be followed. So how do you – what causes us to say, in your view, or what should cause us to say, that this is one of those extraordinary cases where we should excuse him? Your Honor, with regard to the standard, I would ask this Court, and I believe there's a circuit split on it, to apply a de novo standard when there are extraordinary circumstances. Why? I mean, why is a de novo standard better when it's just so much of facts and circumstances and kind of a gestalt? And that's part of where the circuit split comes from, is that the extraordinary circumstances are so fact-based that one court could look at a situation and determine that those are extraordinary circumstances, especially when you're looking at the background of possible constitutional violations. The habeas realm in and of itself is inherently equitable in order to try and protect the potentially innocent person. You're essentially saying we should follow an Ornelas-type rule here. That's the case that the Supreme Court decided, saying that when constitutional matters are at stake, although that actually had to do with voluntariness of a confession, in order to have national uniformity, we need to be more aggressive at the court of appeals level. And I think that's true, Your Honor. And with regard to the circuit split, a majority of the courts actually apply a de novo and abusive discretion hybrid. There are some courts that apply only de novo. But looking at de novo and the hybrid, the reasoning behind those arguments can be borne out through the Third Circuit case, Brinson, which was authored on behalf of the Court by now Justice Alito, which stated the extraordinary circumstances are something that have to be looked at with regard to the case as a whole and with regard to every individual's circumstances. And that is the important part, to allow a court to look at it with new eyes. Do you have any sense of how often courts have found that equitable tolling is appropriate? I'm guessing it must be pretty rare. It is very rare, Your Honor. And I believe that this court in the Nolan decision said that it's a very rare and high burden that equitable tolling needs to meet. So why is Mr. Carpenter one of those people? Well, Your Honor, I would look to the fact that the Nolan decision was looking at a petition under 2256, I believe, where he was looking to get his, or 2255, to get his sentence reduced. And not the same comedy concerns, because 2255 is for federal prisoners. Correct. And this is a situation where the court's inequity themselves have the ability to try and prevent and hopefully prevent a manifest injustice. And here's a situation where Mr. Carpenter is working with reasonable diligence in the AEDPA one-year statute of limitations. He filed a state habeas petition. He also made his attempt to file a stay of his federal habeas petition but failed to submit a petition along with it. With regard to extraordinary circumstances, during that one year, Mr. Carpenter, he wound up in the hospital for blood clots. He was told by his doctors for three weeks that he was not allowed to participate in any recreation, any work at the facility. He was also transferred between facilities after his night petition was denied. So those remaining 127 days that he had, he was in a position where he was, one, under the presumption that he was correct on his timing, that he had 90 days from his night petition to file cert to the Supreme Court, and then another year after that. Again, in and of itself, that misinterpretation of the time might not be an extraordinary circumstance, but the fact that this individual is incarcerated, he's representing himself, he's undergoing medical treatment, and he's trying to follow state and federal procedures puts him in a situation where he is trying to do the best that he can and finding himself bumping up against deadlines. The circumstances you just described describe the vast majority of people seeking relief, seeking habeas relief, with the possible exception of the medical treatment. How long does the record tell us he was off-site, away from the prison? With regard to his hospital visit, it was one day out to a hospital in the community, and then he returned. He was then told to be essentially on complete rest for three weeks with regard to no work, no physical activities. When he was transferred from, I believe it was Wisconsin Secure Detention, to New Lisbon, that was essentially two days of being off-site. To address your concern of a majority of people being in this situation with regard to habeas, there's also a distinction to be made in Mr. Carpenter's position that he is not filing frivolous motions or frivolous petitions in order to upset and harry the courts. Everything he tried to do was an attempt to exhaust his remedies at the state level, while at the same time trying to preserve his remedies at the federal level. But being that he was incarcerated and representing himself, he ran into a misinterpretation of the law, as opposed to waiting two, three, four years before trying to get this done. When he filed his night petition, four days later he filed the motion for a stay at the federal court level. That was denied by the district court. When it got to December of that year, when his time was running out or had ran out, he then realized what had happened and asked the courts for tolling at that point to get back into the federal realm. He had just tried to do the right thing, but wound up doing the wrong thing and found himself locked out of his attempt to get habeas. So suppose we were to agree with you on the equitable tolling. Don't you then run into another roadblock with procedural default, certainly on the ineffective assistance of counsel and self-representation claims and maybe even on everything? I think, Your Honor, that we step back to the equities, is that Mr. Carpenter was trying to preserve all of those issues all the way through. And with regard to ineffective assistance of counsel, that goes to his inability to represent himself pro se on appeal at the state level because he and his attorney at that point were in conflict about what issues to bring forward to the court of appeals. His attorney at the state court of appeals failed to raise the issue about ineffective assistance of counsel, and that's where that conflict wound up in Mr. Carpenter suing his attorney, requesting that the court of appeals remove attorney Bonnison from the case, and he lost out on his ability to challenge what essentially is- But he never presents all of this to the state courts. That's a big problem. I respectfully disagree with that, Your Honor. He did submit a letter to the state court of appeals saying, I want him fired because he's not bringing this issue to you. I want to be heard on my ineffective assistance claim. And he laid that out as well in the civil suit that he filed against attorney Bonnison. Yeah. I'm not sure that's the way the state contemplates this. Remember the Supreme Court's Pozo against McCautry case, where the court expects that fair presentment, you know, use of the state court procedures has to be done in the way, and at the time the state expects it to be done. So let me talk to you for just a minute about the right to a public trial though. That's interesting because he doesn't actually not have a public trial in the sense that nobody's keeping the press out, nobody's keeping adults out. Are you really just complaining that the trial judge doesn't write a good opinion explaining why he's come to the solution he's come to and drew the line that way? I don't think it's even the fact that he didn't write an opinion. It's that he didn't follow the four-step process prescribed by the Supreme Court in Waller. But it is a secret to you why he didn't want children, you know, people under the age of 18? No, Your Honor, but there is a process for a reason, and this four-step process says that the judge has to state his purposes and children under the age of 18. Protecting children, okay. He wanted to protect children. However, reasonable alternatives were never discussed. What would be the reasonable alternative to drawing this 18-year-old line? If he had drawn a 10-year-old line, would you be here? I think it's still the same, is that he didn't come up with reasonable alternatives. He was asked by Mr. Carpenter's trial attorney if she could brief the issue because she had just done it recently and he said no. Right, and I remember he did that. But what's the alternative if you're concerned about exposing people below a certain age, he picked 18, maybe that was not the best age, I don't know, but people below a certain age to graphic sexual content? And that's clearly an interest that the court and everyone would like to prevent from happening. He could have taken particular witnesses, asked the attorneys, what is this testimony going to be about? That sign can go on the door for that particular witness. When it moved on to have a witness, a police officer, coming in to testify about what they saw at the scene and what they discussed with other witnesses uninvolved with the sexual assault or any sexual testimony, then that witness could have been, that sign could have been taken down and that witness is perfectly available. The concern that day was there were school children coming around. Where a court closes a courtroom to anyone under the age of 18, it's likely that those children will have an adult with him. The court is then closing the courtroom to any adults coming in with those children. They're not going to leave them in the hallway. Has the Supreme Court applied this Waller standard to this kind of limited closure as opposed to just completely shutting public access out of the courtroom? It prescribes for limited closure. That's what the Supreme Court wants, and they have applied it to Vourdier in that if Vourdier is— So I'm talking about, say, in essence, just an adults-only trial. Have they dealt with that? To my understanding and to my research, I have not seen that, Your Honor. Okay, thanks. Okay, maybe you want to save a bit for rebuttal? Sure, thank you very much. Ms. Tarver. May it please the Court, I'm Sandra Tarver, Assistant Attorney General for the State of Wisconsin. The District Court properly exercised its discretion when it refused to apply equitable tolling to the statute of limitations. Even under de novo review, Mr. Carpenter is not entitled to equitable tolling because he did not show the District Court that he was reasonably diligent in the pursuit of his federal rights and that extraordinary circumstances prevented him from filing. His limitations period ran untold 238 days, roughly eight months, when he filed his final petition for state collateral review, his night petition, and that night action statutorily tolled the limitations period until it ended on August 1, 2013. Two things are important about that date. As of August 1, 2013, Mr. Carpenter had filed and the state courts had decided every single federal constitutional claim that he alleged in the habeas petition that he ultimately filed in federal court. The second important thing about that date is that he had 127 days remaining in which to timely file his federal habeas petition or until December 6, 2013. So as of August 1, what was there for him to do to pursue his federal rights other than to draft and file a federal habeas petition? Well, you make it sound very easy, but of course, as you know, I'm sure, since you probably do a lot of habeas work, it makes the forms of action at common law look simple. It's a very complex set of rules and something that has daunted more than one lawyer, not to mention prisoners. You know, he's filing all sorts of stuff all the time, but it's maybe not quite the right time or quite the right label. It's a difficult situation that people like Mr. Carpenter are in. Yes, and I think you may be talking about... Well, then let me go to extraordinary circumstances because that is his first extraordinary circumstance argument. He says, I'm not a lawyer. I'm faced with a procedural quagmire, so I misunderstood. I thought on August 1, 2013, that I had a year left in which to file. The problem with that argument is, and by the way, he admits his inaction. He says, you must attribute my inaction during the 127 final days in particular to my believing I had a much longer time in which to file. He's also mentioning other things like these blood clots and the mental health problems and ingrown toenails, several things. Well, let me just say, even if you look at all of those things cumulatively, and I would be happy to go through them item by item, they don't add up to an insurmountable obstacle to having filed his petition on time. So that's what you think Holland requires, an insurmountable obstacle? I think that SOCIA requires an insurmountable obstacle. Well, the Supreme Court's decision is Holland, and they're the ones who are talking about some extraordinary circumstance. I don't read extraordinary to mean insurmountable. Right. Well, this Court has said over and over and over again that a misunderstanding of the law, a misunderstanding of when the statute runs, is not an extraordinary circumstance. It's not an extraordinary circumstance as a matter of law. Extraordinary circumstance is far beyond his control. Right, and so there's no record here that he attempted to research when the statute of limitations would run, but that something got in his way and made it impossible for him to reach that determination. As this Court said in Griffith v. Rednauer, cited in the State's brief at page 21, quote, that sort of error is not extraordinary, it is all too common. And as this Court said in Williams v. Sims, cited in the State's brief at page 22, quote, even reasonable mistakes of law are not a basis for equitable tolling. So here, frankly, I think that this case is hardly extraordinary. And what is particularly a problem for Mr. Carpenter is that he did not do anything to draft and file a habeas petition at any point during his one-year limitations period, and he has admitted his inaction in that regard. That fact alone sets this case miles apart from Holland and miles apart from SOCIA. That fact alone defeats Mr. Carpenter's argument that he satisfied the requirement that he show reasonable diligence. So you like this theory, I suppose, because it just knocks everything out, whether it's the public trial argument and effectiveness of counsel or self-representation or the whole slew of them. If the petition was untimely and the time limit is not equitably told, the District Court is required to dismiss the petition, yes. He was informed by the District Court that he needed to file it. He did at the same time that he filed his final State petition for collateral review. He did file, the public record shows, in federal court a request to stay the time limit, and the District Court's order denying that request said, I can't do that until you file a petition. So he even knew 238 days into the running of his limitation period, presumably, that what he needed to do was file a petition. And he could have done so, but just didn't, perhaps for an understandable reason. Yeah, it's possible he misunderstood what the District Court was trying to tell him, thought he had to wait for the State proceeding to be over, misunderstood how the time was going to run. Yes. In conclusion, Mr. Carpenter never showed the District Court that he made any attempt to draft and file a federal habeas petition before his one-year limitation period expired, and any of any also failed to show that extraordinary circumstances prevented him from timely filing. Under these circumstances, the District Court properly exercised its discretion when it concluded that it could not apply equitable tolling in Carpenter's case. The State respectfully requests that this Court affirm that decision. All right, thank you. I think that's it. Thank you. Anything further, Mr. Keillor? Thank you. Your Honor, the State still seems to be looking at extraordinary circumstances as some type of chimera. This Court, and Your Honor, wrote in SOCIA that if extraordinary circumstances are something that can't be dealt with, there's no remedy at all. That's true, but the idea that somehow something has happened that's beyond your control seems to be what the Supreme Court has in mind in Holland. And that's true. And with that, the Holland decision incorporated a de novo review. It itself looked at the case completely with its own eyes, with no deference to the District or the Circuit Court's findings, and created this decision about how and why someone can be reasonably diligent, and looking at all of the circumstances that they face, not each one individually, but together, how that becomes extraordinary. What barred Mr. Carpenter from throwing a filing into the hopper, you know, at the same time as he's pursuing the State post-conviction? There's no rule against that. I think it was his attempt to not muddy the waters. He was trying to not upset the courts and trying to do everything procedurally. He went through the State filing. He didn't do what the court told him to do. And I don't think there was a clear direction, and that will actually point me to this court's order, where he filed something with this court, and this court said, all you have to do is file the petition. Eighteen days later, he filed that petition. He didn't have that clear direction from the District Court. All the District Court would have had to do is say, all you need to do is file this petition, but it said in its order, I don't have a petition. Denied. A clear issue presented to someone who is not a practicing attorney and sitting in prison could have helped remedy this, and he didn't have that. But as soon as he did, he made the effort and got this filed, and now we're here in front of your honors. So with that, I would ask this court to look at the equities of the situation and either apply the equities and present him with an equitable tolling situation to remand to the District Court with direction. Thank you. All right. Thank you very much. Thanks to the State as well. We will take the case under advisement.